IN THE UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HUNTER DOSTER, et. al. | : | Case Nos. 22-3497; 22-3702 |
|     Plaintiffs/Appellees | : | |
| v. | : | |
| HON. FRANK KENDALL, et. al. | : | |
|     Defendants/Appellants | : | |

**PLAINTIFFS'/APPELLEES' REPLY IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD**

Instead of the Government focusing its argument on why this Court should not supplement the record with the four timely, highly relevant declarations attached to Plaintiffs' Motion, or how this case possibly could be moot, it instead uses its Opposition to confirm Plaintiffs' position that the appeal is not moot – certainly not at this stage of the proceedings. In fact, the Government concedes, as it must, the very reason why these declarations should be admitted: because these declarations ". . . may bear on the mootness of the underlying litigation." (DE# 63-1, PageID#3) But for the same reasons, they also bear upon the mootness arguments raised in this court. And the Government also concedes that the question of mootness is a factual one, best left to be addressed by the District Court. (*Id*. PageID#1). In other words, the Government concedes it has not met its heavy burden to establish mootness. Consequently, it is the Government's *En Banc* Petition that should be denied, not

Plaintiffs' Motion to Supplement the Record. Moreover, the declaration of the Government's latest witness, Associate Chief Hartsell, does not alter this conclusion; rather, his declaration actually supports it (for this and other reasons we do not oppose the Court's consideration of this declaration).

Associate Chief Hartsell confirms this case is not moot by conceding that there are "adverse actions" that have yet to be removed from class members' records. ("As adverse actions are removed from Service members' records in accordance with the Recission Guidance, I anticipate…."). (Dec. Hartsell, DE#63-2, PageID#3-4, ¶9). And Associate Chief Hartsell also confirms that "administrative and/or disciplinary actions" are entered in AMJAMS and that this "derogatory data" has yet to be removed (and in fact will never be). (*Id.* at PageID#3, ¶9). Clearly then, entering this "derogatory data" into AMJAMS and then maintaining this "derogatory data" to cause further harm to class members is simply one more adverse consequence taken against class members that has yet to be permanently rescinded. However, final judgment will accomplish that outcome.

> **I. Plaintiffs' ongoing, but allegedly "speculative," harms have everything to do with the Government's request to vacate the panel opinion and the preliminary injunction**

Other than stating that this Court should do so, the Government gives this Court no logical reason for vacating the preliminary injunction or the panel decision affirming it, particularly where the factual record is clear that the injunction

2

continues to protect class members. In fact, the Government's unfounded request begs the question: why would a court vacate an injunction protecting class members both from ongoing and future harm when the Government concedes that there remains a question of fact as to mootness? To merely pose this question is to answer this question. This Court should not vacate the injunction. In fact, it is the Government's "heavy" burden to demonstrate that all harm has been resolved but, as noted, their Opposition demonstrates the exact opposite. All harm has not been resolved, thus justifying the continued need for the preliminary injunction. *Doster v. Kendall*, 596 F. Supp. 3d 995, 1023 (S.D. Ohio 2022); *see Doster v. Kendall*, 2022 WL 2974733, at *1 (S.D. Ohio July 27, 2022) (extending class-wide the injunction against "taking, furthering, or continuing any disciplinary or separation measures").

As this Court has already recognized, the Government used a discriminatory process to coerce, manipulate, and punish those with sincerely held religious beliefs who were unable to get the COVID-19 vaccine because doing so would violate their beliefs. This punishment includes, as the Government now admits, taking steps to ensure that class members are adversely marked for the rest of their military careers by their refusal to violate their sincerely held religious beliefs.[1] Along with this

---

[1] "When the COVID-19 vaccine mandate was issued, legal offices were directed to enter those who violated that order into AMJAMS as a 'special interest report' so that such actions could be administratively tracked and reported to command chains and higher headquarters on an as-needed basis." (Dec. Hartsell, DE#63-2, PageID#3, ¶6).

admission, the declarations presented to this Court as part of Plaintiffs' Motion to Supplement are just some illustrative examples of the harm left to be remedied, with more likely to be discovered. Consequently, Plaintiffs should be permitted to put additional evidence before this Court, or the District Court, for consideration that the Government has failed to meet its heavy burden as to mootness.

## II. The Government's focus on AMJAMS in its response is significant because it is largely dispositive

Instead of confirming to this Court that the "derogatory data" in AMJAMS have been deleted, or will be deleted at some definite point in the future, the Government implicitly admits it will continue to harm class members by keeping "derogatory data" on class members in AMJAMS. This is despite the fact that Associate Chief Hartsell admits the Government can remove "derogatory data" from AMJAMS if they so choose. (DE#63-2, PageID#4, ¶9). (…while such [Courts-martial] cases may remain in AMJAMS,…). But here, permanently maintaining the "derogatory data" is the point. In fact, the Government's intent to continue to cause harm is clear from the Government's excuse for continuing to keep this "derogatory data" which, allegedly, is in case a servicemember (class member) were to file an Inspector General ("**IG**") complaint or file an Article 138, UCMJ complaint. (Dec. Hartsell, DE#63-2, PageID#2,5, ¶¶ 5,11). The reality is that the Government knows full well that both of these actions have to be filed within 90 days from the date the

4

wrong is discovered,[2] and so any utility of the data for that purpose has long since passed.

Associate Chief Hartsell also provides the equally transparent excuse that the "derogatory data" must be maintained in case a class member were to "write to a member of Congress." (*Id*. at ¶11). However, if a class member were to write a member of Congress about the Government's failure to rectify all the harms caused by the Government's unconstitutional religious discrimination, this lawsuit and this Court's reported decisions are more than sufficient records of "how a command handled a particular case." (*Id.*) And, perhaps sensing that the above excuses do not pass the smell test, Associate Chief Hartsell repeats the Government's magic mantra of ensuring "good order and discipline" as a reason to continue maintaining this "derogatory data" in AMJAMS, as though good order and discipline are furthered by punishing class members for the Government's own unconstitutional discrimination against them. (*Id*.) Indeed, that "magic mantra" has been the

---

[2] "The deadline for the petitioner to submit the informal complaint to the respondent commander is 90 days from the petitioner's discovery of the alleged wrong, unless the respondent commander waives the time requirement for good cause shown. For purposes of this Instruction, days means "calendar days." It is the petitioner's responsibility to establish good cause for untimely submissions." Air Force Instruction (AFI) 51-505, *Complaints of Wrongs Under Article 138, Uniform Code of Military Justice*, ¶ 3.2 (4 Apr. 2019). (available at https://static.e-publishing.af.mil/production/1/af_ja/publication/afi51-505/afi51-505.pdf). "Complaints should be submitted to the IG within 90 days of learning of the alleged wrongdoing, and within one year of learning of the alleged wrongdoing for reprisal complaints. There is no time limit for filing restriction complaints." Air Force Instruction (AFI) 90-301, *Inspector General Complaints Resolution*, ¶ 2.3.2 (28 Dec. 2018).

Government's justification for its RFRA violating vaccine mandate, and for punishments of, and additional adverse actions taken against, religious objectors, some of which continue to the present.

Next, Associate Chief Hartsell admits that official requests to "AF/JA" from Air Force offices seeking a background check do occur. (*Id.*, at PageID#4, ¶9). And he admits that his office is the "office of primary responsibility" regarding confirmation of "courts-martial." (*Id.*) Stunningly, and missing the point entirely, Associate Chief Hartsell then admits that his office has actually delegated authority to all 176[3] of the Air Force's "installation Staff Judge Advocates" to release or disseminate the "derogatory data" in AMJAMS, demonstrating that the harm continues. (*Id.* at PageID#2, ¶5). Not surprisingly, Associate Chief Hartsell never explains why releasing "derogatory data" is ever appropriate where that "derogatory data" never should have existed in the first place.

And in a failed attempt to reassure, Associate Chief Hartsell states that "Department of the Air Force Commanders are expected to approach every instance of a military member's refusal to obey a lawful order to receive the COVID-19 vaccination on a case-by-case basis,". (*Id.* at ¶6). Rather than reassure, what this

---

[3] "There are 176 Department of Air Force installations. The official list of installations is updated annually at the end of each fiscal year." *Energy, Installations, and Environment*. https://www.safie.hq.af.mil/Programs/Installations/#:~:text=There%20are%20176%20Departme nt%20of,end%20of%20each%20fiscal%20year. (last accessed March 27, 2023).

testimony actually establishes is the fact this case is not moot, particularly where the possibility of additional adverse action against these very class members remains, and particularly where theGovernment continues to insist the orders to class members to receive COVID-19 vaccinations are somehow, even now, "lawful". *Parents Involved in Community Schools v. Seattle School Dist. No. 1,* 551 U.S. 701,719. ("But the district vigorously defends the constitutionality of its race-based program, and nowhere suggests that if this litigation is resolved in its favor it will not resume using race to assign students. Voluntary cessation does not moot a case or controversy unless "subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur".")

Ultimately, the Government's game of hide the ball as to the harms it caused, and continues to cause, is getting a bit ridiculous. In both its pleadings, and through the declarations it submits, the Government demonstrates its intent not to remedy all harm done to class members unless ordered to do so in a final judgment. Likewise, the Government's voluntary cessation actions are parceled out to try to moot the case undo adverse court findings. Yet all these half measures are nothing more than additional evidence demonstrating that both voluntary cessation and the capable of repetition yet evading review exceptions to mootness are plainly met here. Consequently, the vacatur that the Government seeks is inappropriate as well. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).

### III.     Conclusion

Given the heightened burden placed upon the Government to demonstrate mootness, Plaintiffs should be permitted to supplement the record before this Court with these additional declarations (and any further evidence that comes to light), (Plaintiffs cannot do so in the District Court presently as it has forbidden *any* further filings in light of a stay it has issued while this Court adjudicates the Government's *en banc* vacatur request). This evidence further demonstrates the Government has failed to meet its burden. In the meantime, because the Government has now admitted that there is, at the very least, an issue of fact about whether the preliminary injunction and this appeal are moot, its request for vacatur should be denied as well. *Bonner Mall Partnership*, 513 U.S. 18.

Respectfully submitted,

Christopher Wiest (OH 77931)  
Chris Wiest, Atty at Law, PLLC  
25 Town Center Blvd, Suite 104  
Crestview Hills, KY 41017  
Tel:   513/257-1895  
chris@cwiestlaw.com

Thomas B. Bruns (OH 51212)  
Bruns Connell Vollmar & Armstrong  
4555 Lake Forrest Drive, Suite 330  
Cincinnati, Ohio 45242  
Tel.:   513/312-9890  
tbruns@bcvalaw.com

Aaron Siri  
Elizabeth A. Brehm  
Wendy Cox  
Siri and Glimstad LLP  
745 Fifth Avenue, Suite 500  
New York, NY 10151  
Tel:   212/532-1091

aaron@sirillp.com
ebrehm@sirillp.com
wcox@sirillp.com

*Counsel for Plaintiffs/Appellees*

## CERTIFICATE OF SERVICE

I have served the foregoing upon the Defendants/Appellees, by electronic mail to their counsel, and through service of this Response via CM/ECF, this 28th day of March, 2023.

*/s/Christopher Wiest*_____
Christopher Wiest (OH 77931)

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(g) and 6th Cir. R. 32(a), I certify that this Reply contains 1,818 words. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

/s/ Christopher Wiest_____